JUDGE JA>IES (special judge)
delivered the opinion oe the court:
This is an appeal prayed by Wickliffe, Nicholas’ devisees, Beall’s administrator, with the will annexed, Samuel Smith’s trustees, Bank of the United States, and Luke Tiernan’s administrator, from a decree of the Fayette circuit court, rendered against them at the February term, 1859, in favor of the complainants, the administrators and heirs of John Breckinridge, deceased, which decree orders the defendants, S. S. Nicholas and R. Hawes, two of the devisees of Col. Geo. Nicholas, deceased, to pay to the complainants the sum of five thousand one hundred and eleven dollars and seventy-six cents, and one half the complainants’ costs of the suit; and also orders defendants Beall’s administrator, with the will annexed, Thos. Dye Owings’ representatives, and Robert Wickliffe, or some other of defendants, to pay complainants eight thousand and thirty-four dollars and seventy-one cents, with interest upon two thousand six *429 hundred and fifty-one dollars and sixty-nine cents, from the date of the decree till paid, and one half the complainants’ costs of suit, by the 1st day of the February term, 1859, which defendants failed to do; and thereupon, by way of enforcing a lien on the following property and estate, enough of it to pay said sums was ordered to be sold, viz: four thousand one hundred and fifty-five and one fourth acres of land, lying within three miles of the forge or furnace of the iron-works on Slate creek, formerly Clark county, Kentucky, being part of the patent to Nicholas and Breckinridge for nine thousand five hundred and thirty-one and one fourth acres, and eighteen forty-eighths of all the property belonging to the firm of John Cockey, Owings & Co., at the date of the mortgage now in existence ; all the lands in which, at the date of the mortgage, Walter Beall had an interest, in conjunction with George Nicholas’ representatives in the county of Montgomery, all the interest held by Walter Beall, at the date of said mortgage, in one thousand two hundred and fifty acres of land on the south side of Licking river, at the mouth of Slate creek, being part of two thousand five hundred acres'entered in the name of Walker Daniel.
This decree was rendered in a suit in chancery, commenced in the Fayette circuit court on the 12th day of September, 1811, by the administrators and heirs of John Breckinridge against the executors of John Lee, the executors of George Nicholas, the executors and heirs of Walter Beall, and others.
This suit is based upon alleged violations of a contract made between John Lee, of the one part, and John Breckinridge and George Nicholas, of the other part, dated August 6, 1795, whereby Lee sold to Nicholas and Breckinridge one moiety of Jos. Blackwell’s nine *430 teen thousand and sixty-two and a half-acre entry in Clark county, Kentucky, at the price of ten pounds per one hundred acres for all that may prove to be of indisputable title; Nicholas and Breckinridge to give their legal services in investigating and clearing out the title; Lee to convey, and Breckinridge and Nicholas to pay the purchase money as soon as the title was ascertained to be clear.
Nicholas and Breckinridge soon afterwards procured a patent in their own names for the moiety of the Blackwell entry so purchased of Lee, for nine thousand five hundred and thirty-one and one fourth acres, being that part which lies at the southwardly end of the entry.
Nicholas died in 1799, and Breckinridge in 1806 — 'the latter intestate, the former testate. Nicholas having made his will, appointing Jos. H. Daviess and James Morrison his executors, and devising to them all his estate, to hold and to sell upon the following trusts; his widow to. have the use of the home place, &c., for life. Out of the proceeds of the residue his debts were to be ' paid, and what remained was to be divided among his children.
Nicholas’ estate proved to be much in debt. The executors made sale of his landed interests, and realized but a very small sum for them; having first given Wilson C. Nicholas a mortgage on them to secure to him certain debts held by him against the testator, George.
These landed interests,'including the interest of Nicholas (an undivided half) in 5,376 acres of the aforesaid tract of 9,53l£ acres, being the part thereof lying more than three miles from the forge or furnace of the United Iron Company on Slate creek, were sold at auction, and Wilson Cary Nicholas, a brother to George, bid them off at the sum of four hundred and fifty dollars. He sold the land last above named to T. D. Owings, who succeeded to the *431 possession under his purchase from W. Cary Nicholas and from John Cockey Owings.
On the first of March, 1798, Breckinridge sold out his interest in the moiety of the Blackwell entry, which lies within three miles of the forge or furnace of the said ironworks, to Walter Beall and George Nicholas — they (Beall and Nicholas) agreeing to take the title as it was without warranty, and pay the persons from whom Nicholas and Breckinridge had purchased said lands the prices they had agreed to give.
On the 28th of July, 1802, Walter Beall made a mortgage to John Breckinridge, whereby he conveyed to him (Breckinridge) all his (Beall’s) interest in the iron-works on Slate creek, carried on under the firm of John Cockey Owings & Co., which interests are eighteen forty-eighths in the iron-works, and the same in all other property belonging to the company; all the lands lying in Montgomery county in which he is concerned in interest with the heirs of George Nicholas; also, 1,250 acres south side Licking, at the mouth of Slate; part of 2,500 entered in the name of Walker Daniel, subject to a contract with Col. N. respecting the same, to indemnify and secure Breckinridge and■ his heirs in the full and perfect execution in all its parts of said contract of March 1st, Í798, on the part of Beall and Nicholas.
On the 18th day of June, 1803, John Cockey Owings and Thos. Dye Owings made a mortgage to Walter Beall, reciting that they had given Beall divers notes, amounting in all to $44,500, being the consideration for the purchase they had made of Walter’s interest in the ironworks on Slate (eighteen forty-eighths), and reciting that the Owingses had agreed to indemnify and save harmless the said Beall against certain undertakings, among which is “ all and every demand which John Breckinridge may *432 have against him, the said Beall, in consequence of a mortgage or other insurance given to the said Breckinridge to indemnify him as a member of the company;” conveying to the said Walter, for the purpose aforesaid,among other things, the same property purchased by them of Beall, and the same which Beall had before that mortgaged to Breckinridge to indemnify him (Breckinridge) against Lee’s demand.
On the 13th and 14th days of June, 1803, a sale was made of all the interest of Walter Beall and John Cockey Owings, as survivors of the iron company, in the ironworks property, under an execution from the Lexington district court, directed to the sheriff of Montgomery, on a judgment in favor of David Williamson, at which sale Cuthbert Banks became the purchaser for the use and benefit of W. Cary Nicholas. This execution sale is recited in an agreement of sale dated the next day (15th of June, 1803) between W. Cary Nicholas and Thomas Dye Owings, whereby W. Cary Nicholas sold to Thomas Dye Owings, by special quit-claim, .all the iron-works property; “but the said Owings is, in either case, to pay to the said Nicholas whatever there may be now due of the consideration which Col. George Nicholas was bound to pay under his contracts for these lands, in proportion to the quantity that he, the said Owings, may be entitled to under this contract,” for the consideration of thirteen thousand three hundred and sixty-six pounds; and Owings agreed to make W. Cary Nicholas a mortgage as well on the twenty-seven forty-eighths as on the twenty-one forty-eighths, as soon as the sheriff of Montgomery conveyed the land sold by him as above recited; but the, mortgage on the twenty-seven forty-eighths is to be first subject to a mortgage to be given to Walter Beall by said T. Dye Owings. *433 On the 12th day of February, 1811, John C. Owings conveyed all his interest in the Slate — -otherwise called Bourbon Iron Works — and lands to Thomas D. Owings.
Condensing these facts so that they may be more easily comprehended, Lee, by executory contract of August 6th, 1795, sells to Breckinridge and Nicholas one moiety of the Blackwell entry on Slate creek, Clark county, Kentucky, at the price of ten pounds per one hundred acres for all to which they may have a clear title. This moiety being assigned to and patented in the name of Breckinridge and Nicholas, they became liable to Lee for the price thereof, viz: ten pounds per one hundred for nine thousand five hundred and thirty-one and one fourth acres, and having taken no security, Lee held a lien on the land for the payment of the price.
On the 1st of March, 1798, Breckinridge sold to Nicholas and Beall all his interest, say half, in the nine thousand five hundred and thirty-one and one fourth acres, which lies within three miles of the forge or furnace ; and as part of the consideration, they agree with Breckinridge to pay the whole of the price which Lee held against Breckinridge and Nicholas; and in 1802 Beall makes to Breckinridge a mortgage on the property to secure Breckinridge in this.
The sale of Breckinridge to Nicholas and Beall made Nicholas the owner of three fourths and Beall one fourth of all the nine thousand five hundred and thirty-one and one fourth acres, within three miles of the forge or furnace, viz: four thousand one hundred and fifty-five and one fourth acres, leaving the remainder (five thousand three hundred and seventy-six acres) the property of Breckinridge and Nicholas.
Nicholas’ will passed the title held by him, viz: one half in the five thousand three hundred and seventy-six *434 acres beyond the three mile circle, and three fourths in the four thousand one hundred and fifty-five and one fourth acres within the three mile circle, to his executors, Morrison and Daviess, in trust for the purposes mentioned in the will. These executors passed the title thereof to Wilson Cary Nicholas, and he to Thomas Dye Owings. He, Owings, was in possession in 1811, at the commencement of this suit.
Owings, in his contract of purchase (13th June, 1803), agreed with W. Cary Nicholas to pay whatever of purchase money George Nicholas owed for the lands; aforesaid, and agreed to make a mortgage to that effect. And he and J. C. Owings, in their mortgage of 18th June, 1803, to Beall, agreed to indemnify Beall against his undertaking to Breckinridge.
Lee having died, his executors commenced an action of covenant against the administrators and heirs of Breckinridge, to recover the price of the land sold by Lee to Breckinridge and Nicholas.
Pending the action of covenant by Lee’s executors against Breckinridge’s administrators and heirs, this suit in chancery was commenced in 1811, having for its object —1st. To enjoin the action of covenant aforesaid. 2d. Ascertain the quantity of land in the purchase from Lee to which an indisputable title could be made, so as to fix the amount that would be justly due Lee’s executors under the covenant sued on by them. 3d. To compel Beall’s representatives and Nicholas’ representatives to pay the amount justly due Lee’s executors; and, if necessary, subject the land sold by Lee and purchased by Beall and by Nicholas, and mortgaged by Beall and by Owings, to secure the payment of said liability.
The circuit court would not grant the injunction asked, and the action of covenant by Lee’s executors vs. Breckin *435 ridge's administrators, &c., went on. It resulted in a verdict in favor of Lee’s executors, against Breckinridge’s heirs and administrators, for one thousand seven hundred and four pounds fourteen shillings and six pence. This was paid by the latter, not long after the rendition of the judgment, say about the year 1828 — some before and some after that time. ■ '
Morrison having died, leaving Mr. Clay his executor, by amended bill he was made defendant, as also the devisees, the children of Geo. Nicholas, deceased; and it appears that W. Cary Nicholas had conveyed all the landed estate Formerly owned by his brother, George Nicholas, to the executor of his said brother in trust; that after certain advances and debts were paid to him out of the proceeds, the residue of said landed estate should be for the benefit of his said brother George's children, and should be so applied by his (George’s) executors. This overplus is alleged by complainants to be of the estate of George Nicholas, while that is denied by the executor of Morrison; and it is alleged by the latter to be a voluntary gift on the part of their uncle to the benefit of his brother’s children.
In the sequel, however, it appears that the children, devisees of Geo. Nicholas, sued Mr. Clay as executor of Morrison, who was surviving executor of Nicholas, in the Jefferson circuit court, charging that this overplus was justly due them; and, by way of defense to their claim, Mr. Clay, executor of Morrison, exhibited and relied on a settlement made by Morrison in his lifetime (1824) of his accounts as executor of Nicholas, in which a balance was made to appear of over twenty-five thousand dollars as due to him from the estate of said George Nicholas; and Mr. Clay relied that if anything might appear to be due to the children of George Nicholas, *436 deceased, that it should be applied to this claim of Morrison, executor of Nicholas, for such of his overpayments ; but this defense was not allowed. The settlement was not regarded by the court as a good defense for Mr. Clay, and he was adjudged to pay five thousand dollars, as the executor of Morrison, to the children and devisees of George Nicholas, and he paid it over to Richard Hawes and S. S. Nicholas, taking from them a refunding bond.
Mr. Clay deeming it his duty, as executor of Morrison, who was executor of Nicholas, to investigate and>3¡make claim of what was due to said Nicholas as a lieutenant colonel in the army of the revolution, made application to the Governor of Virginia, and, having gotten the claim recognized as just, procured an act of Congress whereby scrip for land was obtained and sold by Clay for five thousand seven hundred and forty dollars, and this was sued for or rather submitted to arbitration, the settlement aforesaid again relied on without avail, and -Clay was adjudged to pay this in the same manner, which he did, and also took a refunding bond for this.
While Breckinridge’s heirs and administrators contend these two sums are assets of the estate of George Nicholas, deceased, Mr. Clay (and his executors since made parties) and the children and devisees of George Nicholas contend that neither sum, or any part thereof, is assets of the estate of George Nicholas, deceased.
Robert Wickliffe was the attorney and counsel of Breckinridge’s representatives in the action of covenant of Lee’s executors against them, and also in this suit in chancei-y, from the commencement to 1830 or 1831. He drew the original bill and amendments to the time above stated.
*437 Previous to 1837, Ellicott & Meradith, Samuel Smith, Bank of the United States, Luke Tiernan, and perhaps others, had sued Thomas Dye Owings, recovered large judgments against him, and had execution sales made of his real estate, including the lands in question. Robert Wickliffe had been the lawyer managing some of these claims and causing the sales to be made, and causing the property to be bid in, in the name of his clients.
In 1837 he procured a deed from Owings purporting to be on a compromise; and if the lands in question are not specifically described in this deed, it may be fairly presumed that this was the means of placing Wickliffe in possession of the lands, part of the subject-matter of this suit.
Wickliffe procured the claims acquired by others who had purchased at execution sale, until he secured all except the claim of the complainants in this suit.
• He caused Ellicott & Meradith, Samuel Smith, Luke Tiernan’s administrator, Bank of the United States, and himself, to be made defendants, and has resisted the claim of the complainants, through them and himself, from 1837 to the time of the hearing in the circuit court; and his executors have done the same since his death.
It is argued by Wickliffe’s representatives that neither the mortgage from Beall to Breckinridge, the tripartite contract between Breckinridge, Beall, and Nicholas, or mortgage from Owings to Beall, can lawfully be used against Wickliffe, because of supposed defects in the manner of admitting the originals to record; that the last named mortgage was not made to protect Beall’s liability to Breckinridge on account of his debt to Lee; that Wickliffe had no such actual notice of this mortgage as to affect him; that this suit, being in Fayette, a county in which the land did not lie, was not a Us *438 pendens until Beall’s executor was made a party and served with process; and Wickliffe had held adversely twenty years before this was done, and the limitation law had run in favor of Wickliffe; and that Lee’s judgment for damages against Breckinridge’s representatives was obtained in consequence of Breckinridge’s failure to investigate the land titles; and this was not within Beall’s covenant of indemnity.
It is argued by the counsel of George Nicholas’ devisees, that, so far as the judgment of the circuit court is personal against S. S. Nicholas and R. Hawes it is erroneous, because the relief to Breckinridge’s representatives should have been in rem against the whole of the tract patented to Breckinridge and Nicholas, being the nine thousand five hundred and thirty-one and one fourth acres, half of the Blackwell tract purchased of Lee; that Owens covenanted and mortgaged this land for the discharge of Lee’s claim to Beall, and Beall did the same thing to Breckinridge, and Wickliffe purchased and obtained possession pending Breckinridge’s suit, and with full notice of both Beall’s and Owings’ mortgages and contracts; that the whole of this tract passed through Owings to Wickliffe, and G. Nicholas’ children never enjoyed one cent of it, and Wickliffe’s successors enjoy the whole of it.
That the two five thousand-dollar items described in an amended bill were not assets of Geo. Nicholas’ estate, but were sums of money belonging exclusively to his children ; but, nevertheless, if the court should be of opinion they were assets of the estate of Geo. Nicholas, then Breckinridge’s representatives would not be entitled to them, but Morrison’s executor would be entitled to them to pay the twenty-five thousand dollars which G. Nicholas’ estate fell in debt to Morrison, his executor, on the *439 county court settlement. That the statute of limitations is a bar to the complainants’ claim against Geo. Nicholas’ devisees; that by a contract between Geo. Nicholas and W. Beall of March 2d, 1798, Beall’s part of the purchase of Breckinridge was to be three fourths and Nicholas’ one fourth; therefore, it is error to charge Nicholas with more than one fourth the Lee judgment; that although Breckinridge’s representatives might sue Nicholas’ representatives for contribution after paying the Lee judgment, yet, having elected the remedy against Beall on the liens, should exhaust that remedy first; that inasmuch as Beall was bound by his obligation and mortgage to Breckinridge to discharge Breckinridge’s liability to Lee, and Thos. D. Owings was bound by obligation and mortgage to W. Cary Nicholas to discharge George Nicholas’ liability for Lee’s judgment, and Wickliffe was a lis pendens purchaser, and purchaser with notice of these contracts and mortgages, the whole of the Blackwell tract patented to Nicholas and Breckinridge should be subjected and exhausted before any personal judgment should be rendered against the devisees of Geo. Nicholas; that Breckinridge’s representatives having paid to Lee’s representatives the debt, which was the purchase money, the former are substituted to the lien of the latter, which lien was against all the nine thousand-acre Blackwell tract; and this lien, as well as th'e mortgage liens, should be exhausted before any personal decree is rendered against the devisees of Geo. Nicholas.
The executors of Mr. Clay argue that it should throw suspicion on the claim of complainants against Mr. Clay that they knew the facts and did not set up any claim against him in his lifetime; that the two sums ($5,000 and $5,700) paid by him to Hawes and S. S. Nicholas were not assets of George Nicholas’ estate, and there *440 fore no devastavit was committed in paying these sums to Hawes and Nicholas; that Mr. Clay is protected by the statute of limitations; that up to the payment by Breckinridge’s representatives in 1827-8, their suit did not and could not embrace the object of compelling-contribution from Nicholas’ representatives; that from the time of payment until the filing of the amendment in 1852, no suit was pending for contribution, and therefore twenty years and more elapsed between the accruing of the cause of action and the setting it up by any pleading; that limitation of five years protects Mr. Clay for a misapplication of any assets of George Nicholas, because he is sued, not on his executor’s bond, but for a breach of duty imposed by law; that the $25,000 balance in favor of Morrison on settlement with the county court protects Mr. Clay from any judgment ■ against him in favor of complainants; and that if judgment is given against Mr. Clay, then he claims judgment on cross-bill against Hawes and S. S. Nicholas for the same amount, but contends that a just equity practice would require a direct judgment against the latter in preference to a judgment against Clay, and in favor of Clay against them.
For Breckinridge’s heirs and administrators it is argued that they claim by their suit to recover from Beall’s representatives and Geo. Nicholas’ executors and devisees the whole of the purchase money agreed to be paid Lee for the Blackwell land lying within three miles of the forge or furnace, and half the purchase money for the land lying outside of the three miles aforesaid, and to enforce all liens and mortgages for the same, and to subject certain funds to the payment thereof; that the limitation or lapse of time does not apply to this case, because brought in 1811 in favor of and against the proper parties, and regularly revived and prosecuted *441 ever since; that lapse of time in this case is a benefit rather than an injury to the written instruments offered in evidence; that the administrator de bonis non of Geo. Nicholas is an unnecessary party. The heirs, devisees, and executors of Geo. Nicholas were sued in the first place. It was alleged, by amendment, that, pending the suit, ten thousand seven hundred dollars had come into the hands of the devisees of the estate of their testator; for this, complainants had a right to judgment. That Morrison’s mortgage to W. C. Nicholas to secure him in his debts against Geo. Nicholas, made Morrison liable to all the other creditors of Geo. Nicholas; and W. C. Nicholas’ deed of trust, made to him afterwards, secured him in all his liabilities for the estate of George Nicholas; and that Morrison was thus bound to pay Breckinridge’s claim out of the assets of Geo. Nicholas, and out of the estate conveyed to him by W. C. Nicholas in trust, before any of Geo. Nicholas’ children were entitled to receive anything from that trust. That, as to the first five thousand dollars received by Geo. Nicholas’ devisees, they had sued Morrison’s executor, Clay, for it as overplus, after satisfying all Geo. Nicholas’ liabilities — all Morrison’s liabilities on account of the estate of Nicholas — and this was adjudged to them, the county court settlement to the contrary notwithstanding. This, it is argued, disposes of that settlement.
That the five thousand seven hundred-dollars, proceeds of land scrip, was by the act of Congress made payable to Geo. Nicholas, his heirs, devisees, or assigns; that this was a debt due to Geo. Nicholas, and not a bounty to his children, and consequently assets of his estate; that Wickliffe, while acting as the counsel of Breckinridge’s representatives, and causing the mortgaged estate to be levied on and sold for Tiernan’s debts, the debts of El *442 licott and Meradith, and others, and having the mortgaged estate purchased in by them, owed it to Breckinridge’s representatives as a legal duty to notify Tiernan and others of the existence of the mortgages; and after Wickliffe became the purchaser, it does not lie in his mouth to say his vendors, Tiernan and others, had no notice of the mortgages. That notice was unnecessary. A pending suit is notice. A recorded mortgage is notice.
We are of opinion the tripartite contract between Breckinridge and Beall and Nicholas, and. the mortgage from Beall to Breckinridge, as also the mortgage from Owings to Beall, were properly admitted as evidence in the case. The mortgage of Beall to Breckinridge was properly recorded. It recites the tripartite contract, and none of these documents are denied in such a way as to raise an issue as to their genuineness; and if the record can be construed to raise such an issue, the proof is overwhelming that such contract and mortgages were made, and that Wickliffe had notice of them. The last named mortgage evidently refers to and indemnifies against Beall’s liability to Breckinridge named in his mortgage to him.
The suit being one to obtain a decree against Beall’s representatives and Nicholas’ representatives for a debt, as well as to enforce the collection thereof by sale of lands secured by mortgage, which lands had come into the possession of Thomas Dye Owings, who was made a party defendant, and served in Fayette county, and Nicholas’ executor, defendant, also served in Fayette county, these services being a short time after the filing of the original bill, the Fayette court had jurisdiction, not only to render a decree against the representatives of Beall and of Nicholas, but to enforce the collection of the money decreed by sale of lands lying in another *443 county — tbe lien secured by mortgage being an incident to the debt. It was, therefore, a suit in a court having jurisdiction to enforce a lien against the land that Nicholas purchased of Lee and the land that Nicholas and Beall purchased of Breckinridge which lands had come into the possession of Owings by purchase mediately from Breckinridge and from Nicholas’representatives; Owings holding under their title, and agreeing to pay Beall’s and Nicholas’ liability to Breckinridge, and Owings’ possession thus obtained being anterior to and continued up to the commencement of this suit, Wickliffe’s purchase and succession to the possession of these lands mediately from Owings, while the suit was pending, is a pendente lite purchase ; and Wickliffe having purchased and succeeded to the possession pending the suit, is not protected by the statute of limitations.
To constitute a lis pendens as to strangers, there must be a process issued and served. (Lyle vs. Bradford, 7 Mon., 116.) When the suit is in whole or in part in the nature of a proceeding in rem, to recover or subject any specific property, a sale of the subject of the litigation pending the suit, after service of process even to one who had no notice of the suit, will not change the rights of the parties to the suit, or the power of the court over the subject of the action. It is not necessary to make such a purchaser party to the suit; he takes the property cum onere. (Thomas vs. Southard, 2 Dana, 480.) While the lis pendens may be lost by neglecting to prosecute, a reasonable excuse for the delay complained of is always available to keep up the lis pendens.
We think the pendency of the suit of Lee's ex'rs vs. Breckinridge's heirs and adm'rs and the deaths of parties, are a sufficient excuse for the delay in this case up to the time of payment by Breckinridge’s heirs and administra *444 tors of the Lee judgment. The delay since that time, we think, is accounted for by the making of parties the purchasers- pendente lite, the making of which parties, we think, was unnecessary; and the making of these parties was at the instance of Wickliffe, who complains of the delay.
These preliminary questions being disposed of, we come to the main questions of the case, in meeting and disposing of which, we have little else to do than to follow the contracts of the parties and cany them out as we And them made.
The contract of 6th of August, 1795, was a sale by Lee to Breckinridge and Nicholas of one half the Blackwell entry, which Breckinridge and Nicholas afterwards had surveyed and patented in their own names, making a tract of nine thousand Ave hundred and thirty-one and one fourth acres, for which, so far as the title was good, they agreed to pay Lee ten pounds per one hundred acres.
Breckinridge and Nicholas were jointly bound to Lee for this purchase-money. Lee not only had a right to a personal judgment against both, or the representatives of either, after the death of Breckinridge and Nicholas, but Lee held a lien upon the land for this purchase money until it was paid.
By the contract of Mai’ch 1st, 1798, Nicholas and Beall purchased of Breckinridge all Breckinridge’s interest in the land purchased of Lee, which lies within three miles of the furnace or forge of the Slate Iron Works; and Nicholas and Beall agreed with Breckinridge to pay Lee the same price therefor which Breckinridge and Nicholas had agreed to pay — Beall, on the 28th of July, 1802, giving Breckinridge the mortgage on this land and other *445 property to secure Breckinridge in the performance of his, Beall’s, undertaking.
At this point it is clear Lee held against Breckinridge and Nicholas the purchase-money debt, with a lien against all the land for its payment, strengthened by the mortgage given by Beall to Breckinridge on all within the three mile circles around the furnace and forge i and Breckinridge held the direct obligation of Nicholas and Beall, and Beall’s mortgage, for the payment to Lee by them of the amount of money which Breckinridge and Nicholas had agreed to pay Lee for the same land.
Nicholas died in 1799. By his will he devised this land purchased of Lee, with his other property, to his executors, to hold in trust — 1st. For payment of debts. 2d. For his widow to hold the use of the home place for life. 3d. What might remain to be equally divided between his children.
The executors of G. Nicholas made a deed of trust to W. Cary Nicholas to secure certain debts to him, whereby the lands in question, so far as G. Nicholas had died seized, were conveyed to said W. Cary Nicholas, who proceeded to foreclose the executor’s right of redemption by judicial sale, and himself purchased these lands in at the sale, and also purchased them, through an agent, at execution sale, and afterwards sold them to Thos. Dye 0wings, as before recited. He, 0wings, agreeing to pay W. C. Nicholas what G. Nicholas in his lifetime was owing for a:iy of said lands, and agreed to make W. C. Nicholas a mortgage to secure the same.
By this purchase of Thomas Dye Owings, with the agreement to pay what George Nicholas was bound for on account of the purchase of these lands and agreement to mortgage the lands to secure it, we see that Thomas *446 Dye Owings succeeded to tjfiese lands under the Nicholas and Breckinridge title, and not hostile to it.
Thus the matter stood at Breckinridge’s death, in 1806, and up to 1811; Lee having died in the meantime, and his executors having sued Breckinridge’s administrators and heirs, on the common law side of the court, to enforce the covenant of Nicholas and Breckinridge for the purchase money.
Nicholas and Beall had clearly violated their covenant with Breckinridge (of 1798) in not paying the Lee debt. Beall’s mortgage on the land inside the three mile circles was in full force against Beall’s representative, and Lee held his purchase-money lien on all the nine thousand five hundred and thirty-one and one fourth acres sold to Nicholas and Breckinridge. The land had passed by sale from.both Beall and Nicholas, from one to another, until it’ had fallen into the possession of Thomas Dye Owings, he covenanting to pay as part of the consideration what George Nicholas had agreed to pay for the land,. and that he, Owings, would secure this by mortgage.
This was the state of case in 1811, when this suit was commenced. Robert Wicklifie was counsel for the complainants, and continued in that relation to them for many years while the suit progressed.
There was a fair cause of action against the representatives of both Beall and George Nicholas on account of their failure to pay Lee, and against Owings, he having also failed to discharge the same liability so far as George Nicholas was bound, and he, Owings, being in possession of the land.
Lee’s suit against Breckinridge’s representatives ended in a judgment against them in Lee’s favor for one thousand seven hundred and four pounds, which, with *447 damages, costs, and intei'est, when Breckinridge’s representatives paid it, say about the commencement of the year 1829, amounted to seven thousand four hundred and eighteen dollars and six cents.
Lee’s suit was bitterly and ably contested, and this protracted the preparation of this case, for it could not be ascertained what Breckinridge’s debt against Beall and Nicholas amounted to till Lee’s damages were ascertained ; but when Lee’s damages were adjudged, and paid by Breckinridge’s heirs and administrators, they filed an amended bill setting up the fact of payment, amount, &c., and praying relief.
In the meantime, between 1811 and the payment of Lee’s damages, Wickliffe, while he was counsel for Breckinridges, and attorney for them in the defense of the Lee suit, caused these lands to be sold at execution sale under executions against Owings and others, and caused them to be bid off in the name of his clients, caused deeds to be made to his clients, for whose debts the lands had been sold, and afterwards he purchased of his clients, and also of Owings, and obtained the possession of the lands; and soon after Breckinridge’s representatives paid off the damages and costs to Lee, Wickliffe dissolved his relation of counsel to Breckinridge’s heirs and administrators, and set up the claim of his clients, Ellicott and Meradith, and others, to the lands then about to be sold to pay the claim of Breckinridge’s representatives in this suit, and by a petition to the court caused them to be made parties, and caused himself, at a subsequent period, to be made a party, claiming to have purchased the lands in litigation in this suit.
As soon as Breckinridge’s representatives paid Lee’s judgment for the purchase money, he was substituted to all the liens and securities Lee had to secure the payment *448 of that debt, as against his co-obligor Nicholas, for the amount which Nicholas should have paid, and did not pay, and which was paid by Breckinridge’s representatives. They, as soon as Lee’s judgment was paid, had all the land within the three mile circles bound to them by virtue of Beall’s mortgage, by virtue of Thomas Dye Owings’ contract with W. C. Nicholas, and by virtue of the lien of Lee to which they were substituted by law, for the payment of their claim; also, they had the undivided half of the nine thousand live hundred and thirty-one and one fourth acres which lies beyond the three mile circles bound to them for such payment, by virtue of Owings’ agreement aforesaid with Wilson Cary Nicholas, and by virtue of Lee’s lien aforesaid.
Let us inquire for a moment why all the land inside the three mile circles is subject to the claim of the complainants, and only half of that which lies outside such circles is so liable. It results from the agreement of Nicholas and Beall and Beall’s mortgage to secure it, to pay the purchase money for all the land within three miles of the forge and furnace. There being four thousand one hundred and fifty-five and one fourth acres within, and five thousand three hundred and seventy-six acres without said three mile circles. Whereas, Breckinridge had no agreement from any one to pay Ms part of the purchase money of the laifd outside the circles; but there is the agreement of Owings to pay George Nicholas’ part, and there is Lee’s lien, both which inures to the benefit of Breckinridge’s representatives, as a lien on Nicholas’ half (outside the circles) to secure them in half the cost of such land. It does no| appear from this record that Breckinridge ever sold his part of the Blackwell tract outside the circles aforesaid; but he and Nicholas being joint purchasers from Lee, and bound for the price when *449 Breckinridge’s representatives paid the whole of the price of that outside the circles, his portion of which Nicholas was bound of right to pay, they then are entitled to receive back this portion of the price of the five thousand three hundred and seventy-six acres outside the circles from the devisees of Nicholas.
If Beall and Nicholas were still alive, we can see that, according to these contracts, liens, and mortgages, Breckinridge’s representatives would be entitled to recover of Beall and Nicholas the same proportion of the seven thousand four hundred and eighteen dollars and six cents (Lee’s judgment, damages, costs, and interest paid by Breckinridge’s representatives) which four thousand one hundred and fifty-five and one fourth acres bears to nine thousand five hundred and thirty-one and one fourth acres of land; and would be entitled to recover of Nicholas the further sum equal to half the same proportion to the whole seven thousand four hundred and eighteen dollars and six cents which five thousand three hundred and seventy-six acres bears to the whole nine thousand five hundred and thirty-one and one fourth acres of land. In other words, recover of Beall and Nicholas the whole of the price of the land inside the circles, with its interest, damages, and costs, which Lee’s executors recovered of Breckinridge’s representatives, and recover of Nicholas half the price of the land outside the circles, with interest, damages, and costs, that was so recovered by Lee’s executors.
George Nicholas and' Beall being dead, some complications have arisen, especially on account of the death of the former.
• It is clearly ascertained that two sums of money were paid over by Henry Clay, executor of James Morrison, *450 who was surviving and acting executor of George Nicholas, to S. S. Nicholas, a son, and R. Hawes, a son-in-law, and devisees of George Nicholas, viz : five thousand dollars about the year 1831, and five thousand seven hundred dollars more about the year 1837. These two sums of money together were larger than the complainant’s entire claims at the date of the latter payment (1837).
Whether these sums of money were assets of George Nicholas, is a question discussed at considerable length in the pleadings as well as the arguments of counsel in this case; but the conclusion to which we have come in regard to the liability of the land outside the three-mile circles for the payment of Nicholas’ part of the purchase money thereof to Lee, renders this question of assets or no assets one of no practical importance in the settlement of this controversy.
We are clearly of opinion that the undivided half of the land outside the three-mile circles — being the five thousand three hundred and seventy-six acres, part of the southern half of the Blackwell entry patented in the name of John Breckinridge and George Nicholas — is liable, and should be first subjected, to the payment of Nicholas’ part of the purchase money before his representatives are called on to pay the same from any other source. Breckinridge’s representatives, as before stated, upon payment of the whole purchase money to Lee’s executors, were substituted to Lee’s lien as against Nicholas for Nicholas’ part; and Wilson Cary Nicholas, in his sale to Owings, secured his obligation to pay this as a part of the purchase money, which he never paid; the Nicholas half of the said land outside the circles stands dedicated and liable for the payment thereof; and Wickliife, having acquired the land subject to this encumbrance, *451 we are aware of no principle of law or equity which would exempt it in his hands.
Therefore, upon the appeal of Wickliffe’s executor in this case, the decree of the circuit court is affirmed, with damages and costs.
Upon the appeal of the devisees of Nicholas, the decree of the circuit court is reversed, and a decree directed to be entered against the executors and devisees of George Nicholas, deceased, to be levied first of assets and estate of said Nicholas in the hands of the executors, then of the assets and estate in the hands of the devisees, or which may hereafter come to the hands of either, to be administered for the five thousand one hundred and eleven dollars and seventy-six cents, and half the costs of the suit in the circuit court; but execution not to go on this part of the decree until Nicholas’ undivided half of the land outside the circles, as above indicated, is exhausted by sale, if necessary, to raise said sum of money.
Note by Reporter. — This suit in chancery was commenced in the Fayette circuit court in 1811, and finally decided in this court March 8, 1867.